UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN HOME ASSURANCE COMPANY,

                                    Plaintiff,

                    -against-

ALLAN WINDOW TECHNOLOGIES, LTD.,

                                    Defendant.

**OPINION AND ORDER**

15 Civ. 5138 (ER)

Ramos, D.J.:

     American Home Assurance Company ("American Home") brings this action against

Allan Window Technologies, LTD. ("Allan"), seeking a declaratory judgment that American

Home is not obligated to indemnify or provide a defense to Allan in the lawsuit *Kent Avenue*

*Property I-B LLC v. Allan Window Technologies, LTD and Kreisler Borg Florman General*

*Construction Company, Inc.*, Index No. 651190/2012 (the "Underlying Action"), pursuant to a

policy of insurance.  Before the Court is American Home's motion for summary judgment, Doc.

26.  For the reasons stated herein, American Home's motion is DENIED.

## I.  BACKGROUND

### A. The Underlying Action[1]

     On April 12, 2012, Kent Avenue Property I-B LLC ("Kent") commenced the Underlying

Action by filing a complaint (the "Underlying Complaint") against Defendant Allan and

nonparty Kreisler Borg Florman General Construction Company, Inc., in the Supreme Court of

New York, New York County.  Pl. 56.1 ¶ 1.[2]  The Underlying Complaint alleges that in October,

---

[1] The Court makes no findings regarding the truth of the allegations in the Underlying Action.

[2] The notation "Pl. 56.1" refers to American Home's statement of undisputed material facts pursuant to Local Rule 56.1, Doc. 27-1.

2007, Allan entered into a written contract (the "Window Contract") with an affiliate of Kent, Williamsburg Builders, LLC ("Williamsburg Builders"), for the design, manufacture, assembly and installation of the window wall systems for a residential condominium building located at 164 Kent Avenue, Brooklyn, New York (the "Project"). *Id.* ¶ 2. Pursuant to the Window Contract, Allan agreed to, *inter alia*, (1) promptly correct all work rejected as defective or as failing to conform with the Window Contract, and (2) bear all costs for correcting defective work. Ex. 1 (Underlying Complaint) ¶ 11.[3] Additionally, the Window Contract contains an indemnification provision (the "Indemnification Provision"), which states in part:

> To the fullest extent permitted by law, Contractor [Allan] shall indemnify, defend and hold harmless Developer [Williamsburg Builders] . . . from and against all losses, claims (including, but not limited to, those alleging . . . damage to property of third parties), causes of action, lawsuits, costs, damages, and expenses (including the deductible amount of any insurance and, without limitation, attorneys' fees and disbursements), arising out of or in connection with: (i) . . . damage or injury to, or loss or destruction of, property (including tools, equipment, plant and the buildings at the Project Site and adjacent locations, but excluding the [Project] itself), including the loss of use resulting therefrom sustained or purported to have been sustained as a result of the performance of the [Project] . . . .

Def. Ex. C (Window Contract) at 41.[4] Williamsburg Builders subsequently assigned its rights under the Window Contract to Kent. Pl. 56.1 ¶ 2.

According to the Underlying Complaint, the window wall systems and vent windows installed by Allan were not water-tight or air-tight, and thus did not meet the air and water penetration requirements of the Window Contract. *Id.* ¶ 7; Ex. 1 (Underlying Complaint) ¶ 12.

---

[3] All "Ex." references are to exhibits attached to the Declaration of Steven A. Andreacchi in Support of Plaintiff's Motion for Summary Judgment, Doc. 28.

[4] All "Def. Ex." references are to exhibits attached to the Declaration of John W. Fried, Doc. 31.

Kent alleges that as a result of Allan's breach of the Window Contract, Kent incurred damages associated with the repair and/or replacement of the window wall systems and vent windows in excess of $10,000,000.  Ex. 1 (Underlying Complaint) ¶ 15.  Kent has brought three causes of action against Allan:  (1) breach of contract, (2) breach of warranty, and (3) contractual indemnity.  *Id.* ¶¶ 4-21.  Pertinent here is Kent's contractual indemnity claim, which alleges that:

> 19.  [Allan] agreed in the Window Contract to indemnify, defend and hold harmless Williamsburg Builders, its affiliates and assigns, from and against any and all losses, claims, causes of action, lawsuits, costs, damages, and expenses, including attorneys' fees, arising out of any breach or default by [Allan] under the Window Contract.
>
> 20.  [Kent] is an affiliate and assignee of Williamsburg Builders and has received claims from condominium unit owners and the condominium association at the Project arising out of the aforementioned defects in the windows designed, manufactured and installed by [Allan].
>
> 21.  [Allan] is liable to [Kent] for all losses, causes of action, lawsuits, costs, damages and expenses, including attorneys' fees, arising out of the foregoing condominium unit owners' and association's claims.

*Id.* ¶¶ 19-21.

The Underlying Action is pending, with the parties currently engaged in discovery.  Reply Memorandum of Law in Support of American Home Assurance Company's Motion for Summary Judgment ("Pl. Reply"), Doc. 35, at 3; Defendant's Memorandum of Law in Opposition to Plaintiff's Pre-Discovery Motion for Summary Judgment ("Def. Opp."), Doc. 33, at 6-7.

## B. The Insurance Policy

American Home issued a commercial general liability ("CGL") insurance policy to TMF Kent Partners, LLC bearing the policy numbers 1775038, 1798573, 1617485, 0919569, and 4376454, which together covered the period from April 3, 2006 to December 31, 2010

3

(collectively, the "Policy").  Pl. 56.1 ¶¶ 14, 16.  The Policy was part of an owner-controlled

insurance program ("OCIP") purchased by TMF Kent Partners, LLC to provide coverage for

construction of the Project.  *Id.* ¶ 14.  Allan was an enrolled contractor in the OCIP.  *Id.* ¶ 15.

The Policy provides that American Home will "pay those sums that [Allan] becomes

legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which

[the Policy] applies."  Pl. 56.1 ¶ 17; Ex 2, Commercial General Liability Coverage Form ("CGL

Form"),[5] at 1.  The Policy establishes that the insurance coverage applies "only if . . . [t]he

'bodily injury' or 'property damage' is caused by an 'occurrence' . . . and . . . occurs during the

policy period."  Pl. 56.1 ¶ 17; Ex 2, CGL Form, at 1.

The Policy defines "occurrence" to mean "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions."  Pl. 56.1 ¶ 18; Ex 2, CGL Form,

at 13.  The Policy provides two distinct definitions for "property damage":

> a. Physical injury to tangible property, including all resulting loss
> of use of that property. All such loss of use shall be deemed to
> occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured.
> All such loss of use shall be deemed to occur at the time of the
> "occurrence" that caused it.

Pl. 56.1 ¶ 19; Ex 2, CGL Form, at 13.

The Policy further provides that American Home shall defend Allan "against any 'suit'

seeking those damages," but would have no duty to defend Allan "against any 'suit' seeking

damages for 'bodily injury' or 'property damage' to which [the Policy] does not apply."  Pl. 56.1

¶ 17; Ex 2, CGL Form, at 1.  The Policy thus contains a number of exclusions.  First, the Policy

---

[5] Each of the policy numbers that make up the Policy contain a CGL Form, all of which include the same language cited herein.

expressly states that it does not apply to liability assumed in a contract or agreement.  Ex. 2,

CGL Form, at 2.  The Policy contains an exception to this exclusion, however, for liability that

has been assumed in an "insured contract."  The Policy states, in pertinent part:

> This exclusion [for contractual liability] does not apply to liability
> for damages:
>
> . . .
>
> (2) Assumed in a contract or agreement that is an "insured
> contract", provided the "bodily injury" or "property damage"
> occurs subsequent to the execution of the contract or agreement.
> Solely for the purposes of liability assumed in an "insured
> contract", reasonable attorney fees and necessary litigation
> expenses incurred by or for a party other than an insured are
> deemed to be damages because of "bodily injury or "property
> damage", provided:
>
>> (a) Liability to such party for, or for the cost of, that party's
>> defense has also been assumed in the same "insured
>> contract"; and
>>
>> (b) Such attorney fees and litigation expenses are for
>> defense of that party against a civil or alternative dispute
>> resolution proceeding in which damages to which this
>> insurance applies are alleged.

*Id.*

One of the several ways in which the Policy defines an "insured contract" includes:

> That part of any other contract or agreement pertaining to your
> business . . . under which you assume the tort liability of another
> party to pay for "bodily injury" or "property damage" to a third
> person or organization. Tort liability means a liability that would
> be imposed by law in the absence of any contract or agreement.

*Id.* at 11-12.

In addition to the contractual liability exclusion, the Policy contains an endorsement

excluding coverage for claims of "professional liability."  Pl. 56.1 ¶ 20; Ex. 2, Exclusion-

Contractors-Professional Liability, at 1.[6]  That exclusion states:

> 1. [The Policy] does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
>> a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
>>
>> b. Providing, or hiring, independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
>
> 2. Subject to Paragraph 3. below, professional services include:
>
>> a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
>>
>> b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
>
> 3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Pl. 56.1 ¶ 20; Ex. 2, Exclusion-Contractors-Professional Liability, at 1.

## C. Procedural Background

By letter dated June 29, 2013, American Home agreed to defend Allan in the Underlying Action under a full reservation of rights, including the right to withdraw from the defense if it were determined that the Policy does not provide coverage for the claims against Allan.  Pl. 56.1 ¶ 22.  Allan accepted the defense subject to American Home's reservation of rights.  *Id.* ¶ 23.  On June 26, 2015, American Home issued a supplemental reservation of rights to Allan, which again reserved American Home's right to withdraw from defending Allan.  *Id.* ¶ 22.  On July 1, 2015

---

[6] Each of the policy numbers that make up the Policy contain an Exclusion-Contractors-Professional Liability endorsement, all of which include the same language cited herein.

American Home commenced this action, seeking a declaratory judgment that it did not have a duty to indemnify or defend Allan in the Underlying Action.  *See* Doc. 1 (Complaint).

## II. LEGAL STANDARD

Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

Where the sole question presented on a motion for summary judgment is the interpretation of a clear and unambiguous contract, the issue is one of law that may be decided by the Court upon a motion for summary judgment.  *See Fed. Ins. Co. v. Zurich Am. Ins. Co.*, 445 F. App'x 405, 408 (2d Cir. 2011); *see also Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991) (same).

## III. DISCUSSION

### A. Choice of Law

Neither party has addressed the issue of which law applies to this contractual dispute. The parties' briefing, however, applies New York law.  "Federal courts sitting in diversity look to the choice-of-law rules of the forum state."  *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363

F.3d 137, 143 (2d Cir. 2004).[7]   Pursuant to New York's choice-of-law rules, an agreement between the parties to apply New York law, even if implicit, is sufficient to establish the appropriate choice of law.  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *see also Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Accordingly, the Court applies New York law.

## B. Duty to Defend

American Home seeks a declaration with respect to two separate duties:  its duty to defend Allan and its duty to indemnify Allan.  In New York, "an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify."  *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 137 (2006)).  "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person."  *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford,* 64 N.Y.2d 419, 424 (1985).

To determine if a defense obligation exists, the Court must determine whether the allegations, "liberally construed," are "within the embrace of the policy."  *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8-9 (1985)).  The insured party bears the burden of establishing that the claimed loss falls within the scope of the policy.  *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 218 (2002).  "If the complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend."  *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) (internal citation

---

[7] American Home alleges subject matter jurisdiction based on diversity.  According to the Complaint, American Home is a New York corporation with its principal place of business in New York, and Allan is a Canadian corporation with its principal place of business in Ontario, Canada.  Doc. 1 (Complaint) ¶¶ 1-2.

omitted) (emphasis added).  Furthermore, if any allegations "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," an insurer must defend.  *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 306 (1984).  Thus, "[t]he insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy."  *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 95 Civ. 4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) (citing *Seaboard*, 64 N.Y.2d at 310-11).  And "[t]he duty [to defend] remains 'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'"  *Auto. Ins. Co. of Hartford,* 7 N.Y.3d at 137 (quoting *Fitzpatrick v. Am. Honda Motor Co.,* 78 N.Y.2d 61, 63 (1991)).

Conversely, "a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach."  *Century 21*, 442 F.3d at 82-83 (quoting *Servidone*, 64 N.Y.2d at 424); *see also Town of Moreau v. Orkin Exterminating Co.*, 165 A.D.2d, 415, 418 (Third Dep't 1991) ("When the allegations of the complaint allow for *no interpretation* that will bring them within the coverage afforded by the policy, there is no duty to defend as a matter of law.") (emphasis added); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1424 (S.D.N.Y. 1991), *judgment entered*, No. 86 Civ. 9626 (KC), 1993 WL 427035 (S.D.N.Y. Oct. 15, 1993) ("An insurer . . . has no duty to defend where there are *no circumstances* under which it would be required to indemnify the insured for any damages for which the insured might be found liable in the underlying action.") (emphasis added).  When an exclusion clause is relied upon to deny coverage, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage."  *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002).  The insurer must "demonstrate that the

allegations of the complaint cast that pleading solely and entirely within the policy exclusions." *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137 (citing *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992)).

New York law permits insurers to provide their insureds with a defense subject to "a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage." *Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.*, 128 A.D.3d 556, 559 (First Dep't 2015). Insurers are entitled to reimbursement of defense costs upon a determination of non-coverage so long as the reservation was communicated to the insured and the insured did not object to the reservation. *See, e.g.*, *Max Specialty Ins. Co. v. WSG Investors, LLC*, No. 09 Civ. 5237 (CBA) (JMA), 2012 WL 3150579, at *8 (E.D.N.Y. April 20, 2012); *Axis Reinsurance Co. v. Bennett*, No. 07 Civ. 7924 (GEL), 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008); *Dupree v. Scottsdale Ins. Co.*, 96 A.D.3d 546, 546 (First Dep't 2012).

**C. Coverage Under the Policy**

The parties do not dispute that the American Home Policy provides coverage for liability assumed in an "insured contract." Nor do they dispute that the Indemnification Provision of the Window Contract constitutes an "insured contract." Pl. Reply at 8; Def. Opp. at 15-16. The Policy defines "insured contract" as: "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Ex. 2, CGL Form, at 2. Correspondingly, the Indemnification Provision is part of a contract pertaining to Allan's business, under which Allan assumed Kent's liability "from and against all losses, claims (including, but not limited to, those alleging . . . damage to property of third parties), . . . arising out of or in connection with: (i) . . . damage or injury to, or loss or destruction of, property . . . ,

10

including, the loss of use resulting therefrom sustained or purported to have been sustained as a result of the performance of [the Project]."  Def. Ex. C at 41.  There is thus no doubt that under the Indemnification Provision, Allan has assumed the tort liability of Kent, and has agreed to pay for any "bodily injury" or "property damage" to third persons affected by Allan's construction of the window wall systems.[8]

However, liability assumed in an "insured contract" is only covered by the Policy if "damages to which [the Policy] applies are alleged."  Ex. 2, CGL Form, at 2.  The damages must therefore stem from "bodily injury" or "property damage" caused by an "occurrence."  *See id.* at 1.

American Home asserts that there are no allegations in the Underlying Complaint of damages caused by an "occurrence."  Under New York law, an "occurrence" of property damage under a CGL policy cannot exist where a general contractor's "negligent acts only affect[ ] [the property owner's] economic interest in the building."  *George A. Fuller Co. v. United States Fid. & Guar. Co.*, 200 A.D.2d 255, 259 (First Dep't 1994).  This is because "[t]he coverage [provided by a CGL policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."  *J.Z.G. Res., Inc. v. King*, 987 F.2d 98, 103 (2d Cir. 1993); *see also Transp. Ins. Co. v. AARK Const. Grp., Ltd.*, 526 F. Supp. 2d 350, 356-557

---

[8] Indeed, under New York law, courts have consistently found that provisions functionally identical to the Indemnification Provision of the Window Contract constitute "Insured Contracts," as that term is commonly defined in CGL insurance policies.  *See, e.g.*, *Kassis v. Ohio Cas. Ins. Co.*, 12 N.Y.3d 595, 599 (2009) (finding that the hold harmless agreement in a real property lease made that lease an "insured contract."); *United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 264 (S.D.N.Y. 2013) (finding that a contract between UPS and Adelis, a security company, was an "insured contract," as that term was defined in the CGL insurance policy sold to Adelis because the contract pertained to Adelis's business and required Adelis to assume the tort liability of UPS for bodily injury to third parties.); *Jacuzzi, Inc. v. Atlantic Cas. Ins. Co.*, No. 09 Civ. 4012 (JS), 2010 WL 1848861, *3 (E.D.N.Y. May 5, 2010) (finding that an "insured contract" is a contract "to assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization.").

(E.D.N.Y. 2007) ("It has been well-settled by the New York courts that a CGL policy does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product.").

American Home claims that the relief sought in the Underlying Complaint is only for costs associated with the repair or replacement of the window wall systems and vent windows constructed by Allan.  According to American Home, because there are no allegations of damage to some other property, independent of Allen's work product, it makes no difference from a coverage standpoint whether the relief is sought pursuant to an insured contract or not.  *See* Pl. Reply at 9.

Looking to the Underlying Complaint, Kent alleges that it "has received claims from condominium unit owners and the condominium association at the Project arising out of . . . defects in the windows designed, manufactured and installed by Allan Window."  Ex. 1 (Underlying Complaint) ¶ 20.  The substance of the claims is not further described.  Kent asserts that under the Indemnification Provision, Allan is liable "for all losses, causes of action, lawsuits, costs, damages and expenses, including attorneys' fees, arising out of the foregoing condominium unit owners' and association's claims."  *Id.* ¶ 21.

In evaluating these allegations, it is not clear whether the claims Kent has received, and for which Allan is liable, are related to damages to the window wall systems themselves, or to other property owned by the condominium unit owners/condominium association.  Yet as stated above, "[i]f the complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased, the insurer is obligated to defend."  *Technicon Elecs. Corp.*, 74 N.Y.2d at 73 (internal citation omitted).  Here, it is entirely possible that some or all of

the claims alleged in the Underlying Complaint are for tort damage caused to third-party property, distinct from Allan's work product.  Because American Home cannot reasonably claim that the "allegations of the complaint allow for *no interpretation*" that the unit owners' claims relate to third-party property damage, and thus fall "within the coverage afforded by the policy," the Court cannot conclude that American Home does not have a duty to defend Allan in the Underlying Action.  *Town of Moreau*, 165 A.D.2d at 418 (emphasis added); *see also Avondale Indus.*, 774 F. Supp. at 1424 ("An insurer . . . has no duty to defend where there are *no circumstances* under which it would be required to indemnify the insured for any damages for which the insured might be found liable in the underlying action.") (emphasis added).

American Home argues that coverage is nonetheless precluded by the Policy's "professional services" exclusion.  The professional services exclusion bars coverage for "bodily injury" or "property damage," caused by "professional services," which include:  "a. Preparing approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and b. Supervisory or inspection activities performed as part of any related architectural or engineering activities."  Ex. 2, Exclusion-Contractors-Professional Liability, at 1.  American Home argues that because there are allegations in the complaint pertaining to Allan's "design" of the window wall systems, the professional services exclusion applies.  Pl. Reply at 9-10.  However, even assuming, as American Home does, that all "design-based claims" are excluded by the professional services exclusion, the Court does not find that the allegations in the Underlying Complaint can be construed to be premised solely upon Allan's design of the window wall systems.  When an exclusion clause is relied upon to deny coverage, "the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted *only to exclude coverage*." *Town of Massena*, 98 N.Y.2d at 444 (emphasis added).  Kent alleges that the window wall

13

systems and vent windows installed by Allan were "improperly designed, manufactured, assembled and/or installed" by Allan.  Ex. 1 (Underlying Complaint) ¶ 12.  Thus, the allegations indicate that the defects could plausibly be due to Allan's faulty manufacturing, assembly, or installation of the windows.  Furthermore, the exclusion is explicit that "professional services" do not include services within "construction means, methods, techniques, sequences and procedures employed by [Allan] in connection with [Allan's] operations in [Allan's] capacity as a construction contractor."  Ex. 2, Exclusion-Contractors-Professional Liability, at 1.  Because American Home cannot "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the [professional services] exclusion[]," *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137, American Home cannot rely upon that exclusion to deny coverage.

"The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Massachusetts Bay Ins. Co.*, 1996 WL 389266, at *4.  Given that some of the claims in the Underlying Complaint may be covered by the "insured contract" provision of the Policy, the Court cannot conclude at this stage that American Home does not have a duty to defend Allan in the Underlying Action.  Nor can the Court conclude that American Home does not have a duty to indemnify Allan.  Liability in the Underlying Action has not yet been determined, and thus a declaratory judgment as to American Home's duty to indemnify is not ripe for adjudication.  *See Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (2013).

## IV. CONCLUSION

For the foregoing reasons, American Home's motion for summary judgment is DENIED. The parties are directed to appear for a status conference on August 26, 2016 at 10:30 AM.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 26.

It is SO ORDERED.


Dated:     August 2, 2016
           New York, New York


Edgardo Ramos, U.S.D.J.